# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Decided May 31, 2019

No. 18-5179

NATIONAL PARKS CONSERVATION ASSOCIATION,
APPELLANT

v.

TODD T. SEMONITE, LIEUTENANT GENERAL, ET AL.,
APPELLEES

———

Consolidated with 18-5186

———

On Petitions for Rehearing

———

Before: GARLAND, *Chief Judge*, and TATEL and MILLETT, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: On March 1, 2019, this court held in the clearest of terms that the U.S. Army Corps of Engineers had violated the National Environmental Policy Act (NEPA) when, without first preparing an environmental impact statement, it issued a permit to the Virginia Electric and Power Company ("Dominion") to construct the Surry-Skiffes Creek-Whealton project, consisting in relevant part of a series

of electrical transmission towers across the historic James River. *See National Parks Conservation Ass'n v. Semonite*, 916 F.3d 1075, 1082–89 (D.C. Cir. 2019); *see also Sierra Club v. U.S. Army Corps of Engineers*, 803 F.3d 31, 37 (D.C. Cir. 2015) ("At the heart of NEPA is the procedural requirement that federal agencies prepare . . . an Environmental Impact Statement . . . ."). We vacated the permit. *See National Parks Conservation Ass'n*, 916 F.3d at 1089.

Neither "downplaying the seriousness of the deficiencies found by this Court" nor "request[ing] any change in the opinion language directing the Corps to prepare an" EIS, the Corps, joined by Dominion (collectively, "Petitioners"), now seeks panel rehearing solely on the issue of remedy. Federal Appellees' Petition for Panel Rehearing ("Corps Petition") at 5, 9, 14 (alteration and internal quotation marks omitted). Citing *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (explaining that, although vacatur is the default remedy to correct defective agency action, the court may elect a different remedy based on "the seriousness of the order's deficiencies" and "the disruptive consequences" of vacatur (internal quotation marks omitted)), Petitioners urge us "to remand to the agency without vacating the underlying permit," Corps Petition, at 14. In support, the Corps observes that when this court decided the case it did not "have before it the recent factual developments regarding completion of construction and the disruption that vacating the permit could cause." *Id.* at 4. That, of course, is because neither petitioner bothered to advise us that construction on the project had been completed and the transmission lines electrified the week before we issued our opinion.

For their part, the National Parks Conservation Association and the National Trust for Historic Preservation (collectively, "Conservation Groups") argue that the *Allied-Signal* factors weigh in favor of maintaining the vacatur, that Petitioners waived the argument they now make by failing to raise it during the merits stage of the appeal, and that Petitioners are judicially estopped from presenting this claim based on representations they made to the district court and this court in earlier stages of the litigation.

In support of their estoppel argument, the Conservation Groups point out that Petitioners' position regarding the appropriate remedy on appeal has changed during the course of this litigation. To defeat the Conservation Groups' motions to enjoin construction of the towers, Petitioners assured the district court that an injunction was unnecessary because if the Conservation Groups succeeded on the merits—that is, if the court ruled that the Corps was required to prepare an EIS—the permit could be vacated and the towers correspondingly removed. *See, e.g.*, Federal Defendants' Opposition to Plaintiff's Motion for Injunction Pending Appeal at 9, *National Parks Conservation Ass'n v. Semonite*, No. 1:17-CV-01361 (D.D.C. June 25, 2018), ECF No. 115 ("[I]f Plaintiff were able to succeed on the merits of its appeal and satisfy the heavy legal burdens to establish entitlement to such a remedy, the steel towers Dominion will place atop existing foundations could be removed."). The district court relied on that representation. Over the Conservation Groups' protests that "construction of the towers will render the project a fait accompli," the court denied the motion for injunctive relief, reasoning that "[s]hould it ultimately be determined that the Army Corps of Engineers unlawfully issued the permit for the project, the Court can order the towers removed." Order at 4–5, *National Parks Conservation Ass'n v. Semonite*, No. 1:17-CV-01361 (D.D.C. July 3, 2018), ECF No. 117 (internal

quotation marks omitted). Petitioners made the same guarantees to this court when opposing the Conservation Groups' motion for an injunction pending appeal. *See, e.g.*, Dominion's Response to Plaintiff-Appellant's Emergency Motion for an Injunction Pending Appeal at 16 ("[T]he towers can be removed, and any preexisting views restored completely . . . if [the Conservation Groups] prevail[] on appeal."); Federal Appellees' Opposition to Motion for an Injunction Pending Appeal at 22 (observing that the court has the "power to order a project removed" where a "NEPA analysis [is] legally inadequate" (internal quotation marks omitted)). And we, too, denied the motion.

As the Conservation Groups see it, Petitioners' conduct calls for the court to invoke judicial estoppel: "Now that [the Conservation Groups] ha[ve] prevailed," they observe, "[Petitioners] take the opposite tack. Having argued (successfully) that tower removal could be accomplished in the event that [the Conservation Groups] ultimately succeeded on their EIS claim, [Petitioners] now argue that [the Conservation Groups are] not even entitled to the default remedy provided by the [Administrative Procedure Act]." National Parks Conservation Association's Response to Appellees' Rehearing Petitions at 9. "[H]aving taken one position to gain the substantial benefit of constructing a project during ongoing litigation that otherwise would have been prohibited, [Petitioners] cannot now advance a contradictory position that would place [the Conservation Groups] in the extremely prejudicial position of having obtained a largely hollow victory." *Id.*; *see New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[J]udicial estoppel . . . prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (internal quotation marks omitted)).

We find the foregoing more than a little troubling. Had the Corps and Dominion said all along what they say now, either the district court or this court might have enjoined tower construction, in which case our consideration of "disruptive consequences," *Allied-Signal*, 988 F.2d at 150, would focus not on shutting down and removing the towers, but rather on prohibiting their construction—a very different balance indeed. Moreover, having completed construction, Petitioners now attempt to use it to place an even heavier thumb on the scale, as they represent that they have invested $400 million in tower construction, as compared to the "$178.7 million cost asserted in the Corps' [Environmental Assessment]." National Parks Conservation Association's Response to Appellees' Rehearing Petitions at 14; *see also* Dominion's Petition for Rehearing or Rehearing En Banc at 15.

All this said, we nonetheless believe the best course of action is to remand the case to the district court to consider, in view of Petitioners' and the Conservation Groups' arguments, whether vacatur remains the appropriate remedy, including whether Petitioners have forfeited or are judicially estopped from now opposing vacatur. That court is best positioned to order additional briefing, gather evidence, make factual findings, and determine the remedies necessary to protect the purpose and integrity of the EIS process. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (noting that district courts possess "the ability to fashion an appropriate sanction for conduct which abuses the judicial process").

Accordingly, without expressing a view as to the appropriate outcome of the district court's inquiry, we remand the case for further proceedings consistent with the court's opinions in this case.

*So ordered.*